IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MILTON MANNING,　　　　　　　　　　　　　　　　　　　　CV. 04-924-AS

　　　　　　　Plaintiff,

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　FINDINGS AND
　　　v.　　　　　　　　　　　　　　　　　　　　　　　　RECOMMENDATION

JO ANNE B. BARNHART,
Commissioner of Social Security,

　　　　　　　Defendant.
_____

ASHMANSKAS, Magistrate Judge:

　　　Plaintiff Milton Manning ("Manning") filed this action under section 205(g) of the Social Security Act (the "Act") as amended, 42 U.S.C. §405(g), to review the final decision of the Commissioner of Social Security (the "Commissioner") who denied him social security disability insurance benefits ("Disability Benefits") and supplemental security benefits ("SSI") (collectively "Benefits") from his alleged onset date.

## PROCEDURE

　　　On or about April 5, 1996, Manning filed an application for Benefits alleging an onset date of March 15, 1988. The application was denied initially, on reconsideration, and by the

Administrative Law Judge (the "ALJ") after a hearing. The Appeals Council denied review and the ALJ's decision became the final decision of the Commissioner. Manning appealed the Commissioner's final decision to this court, which reversed and remanded the action to the ALJ for additional proceedings based on a stipulation by the parties. The ALJ conducted a second hearing and found Manning disabled as of April 25, 1996, effectively denying Manning's application for Disability Benefits and altering the date of his entitlement to SSI.[1] The ALJ's second decision became the final decision of the Commissioner. It is this decision that is now before the court.

## FACTS

Manning is fifty years old. He graduated from high school, worked as a painter for a while and then joined the military, where he served from 1979 to 1988. His past relevant work experience includes painting, meat packing and general clerical work, including envelope stuffing. Manning has not been involved in a successful work attempt since March 1996 and there is some dispute about whether he engaged in substantial gainful activity between August 1995 and March 1996. Manning alleges disability because of Morton's feet (deformed feet), arthritic knees and hands, left knee reconstruction, degenerative joint disease, neck pain, depression and alcoholism/drug abuse. Manning last met the insured status requirements entitling him to Benefits on March 31, 1994.

### Testimony

At the February 23, 1998, hearing, which occurred prior to the first decision, Manning testified that he was injured while boxing during his time in the military. He claimed to have

---

[1] After the initial denial of Manning's application for benefits, Manning filed an application for supplemental security income benefits ("SSI"). Manning was found disabled beginning February 5, 1999, and entitled to SSI as of that date. The ALJ's finding with regard to SSI is not before the court and will not be disturbed.

problems with his hands and knees swelling and locking and with his memory, concentration and social skills.

From August 1995 through March 1996, Manning worked at numerous odd jobs that he obtained through more than one temporary staffing agency. He engaged primarily in office work, such as stuffing envelopes. He would work for a week or two then be let go because other people were faster, more reliable workers. He had trouble standing and working with his hands for extended periods and, on occasion, he would hear voices. Manning would wait a day or two, or longer on some occasions, then return to an agency and be sent out on another short-term assignment. For two to three months, he was paid $10 an hour for monitoring and observing the luggage system being installed at the Denver International Airport. For most of his other jobs, he earned $5 per hour.

In mid-March 1996, Manning sought mental and physical assistance from the VA. He reported that he had been abusing cocaine for a period of time and was admitted to a drug and alcohol treatment program. Manning has not worked since he was released from the VA treatment facility.

Manning did not attend the second hearing which occurred on November 12, 2003. At the second hearing, the ALJ and Manning's attorney discussed Manning's temporary jobs earning from August 1995 through March 1996 and whether such activity qualified as substantial gainful activity under the Act.

**Documentary Evidence**

The record contains statements from nine temporary staffing agencies which reveal wage information for August 1995 to March 1996. A review of these statements establish that Manning

worked for the following agencies during the months indicated:

| | |
|---|---|
| Olsten Staffing Services, Inc. | Aug, Sept and Oct 1995 |
| Printers Personnel, Inc. | Aug, Sept, Oct, Nov and Dec 1995 |
| | Jan, Feb and March 1996 |
| Standby Personnel[2] | Aug, Oct, Nov, and Dec 1995 |
| Snap | Oct 1995 |
| SOS Staffing Services | Oct 1995 |
| Divine-Allied Forces | Nov 1995 |
| Nationwide | Jan 1995 |
| Excel Personnel | Feb 1996 |

The same statements reveal that Manning earned the following wages[3] during the months indicated:

| | |
|---|---|
| August, 1995 | $ 984.00 |
| September, 1995 | $1,162.25 |
| October, 1995 | $ 830.78 |
| November 1995 | $1,065.53 |
| December 1995 | $1,642.63 |
| January 1996 | $1,080.13 |
| February 1996 | $ 374.25[4] |
| March 1996 | $ 597.75 |

---

[2]The Commissioner compiled a report showing that Manning worked for Standby Personnel during the first three months of 1996 and earned $1,354.75 during that time period. The statements from Standby found in the record address only Manning's employment in 1995. Manning quotes the report in his memorandum without contesting the amounts earned in 1996 and, therefore, impliedly agrees with this information.

[3]The records are somewhat ambiguous about compensation paid to Manning but these figures represent the sum of the lower amounts of compensation reported by the staffing agencies.

[4]Social Security records reveal that Manning earned $3,406.88 in wages in 1996, which had to occur in the first three months of the year as Manning was in treatment for the remainder of the year. Transcript at 758. This would necessarily increase the income for each of these months by about $450 putting Manning's wages for February at $824.25.

The Commissioner's own records show that Manning earned $10,115.80 in 1995 and $3,406.88 in the first three months of 1996.

## ALJ Decision

The ALJ noted that Manning engaged in significant work activities through temporary agencies in 1994, 1995 and 1996, earning over $10,000 in 1995 and $3,400 in the first two and one-half months of 1996, which qualified as substantial gainful activity under the provisions of the Act in effect during this period. The ALJ rejected Manning's argument that the work was temporary and of short duration and, therefore, not substantial gainful activity, explaining that " the number of employers and short length of specific jobs were due to the nature of temporary agency employment rather than unsuccessful performance of the work by the claimant." Transcript at 730.

Additionally, the ALJ relied on his discussion and discounting of Manning's credibility set forth his previous decision. In that decision, the ALJ found that Manning's statements regarding his impairments and their impact on his ability to work were not entirely credible in light of discrepancies between his testimony regarding his limitations and the description of Manning's limitations contained in the documentary reports and medical records. The ALJ specifically mentioned that Manning's reports of disability based on his foot and hand problems were not supported by the medical reports. Also, the ALJ noted that the Manning's scores on a memory test conducted just prior to the hearing were far below what would be expected "even in the case of a severely demented individual, suggesting that he was exaggerating his memory impairment" especially when compared to the results of a similar test performed in October 1996 that revealed only "mild" memory impairment. Transcript at 21. Similarly, Manning's score on his IQ testing was 60, a level consistent with individuals who can't report telephone or social security numbers and who

have obvious physical symptoms, such as a speech impairment, none of which Manning displayed. The October 1996 testing by the VA found no cognitive problems.

With regard to his substance abuse, Manning testified at the hearing that he had used cocaine for only one month. However, Manning previously represented to the VA that he had been using crack cocaine for 2 years and that he spent $50 to $100 per day to support his drug habit. Another inconsistency noted by the ALJ was that Manning reported to one provider that he received A's and B's in high school and community college and had no learning problems and to another provider that he had B's and C's in school and suffered from dyslexia.

The ALJ summarized his findings with regard to Manning's credibility as follows:

> The undersigned finds the claimant to be less than fully credible with respect to his allegations of pain and other symptoms for reasons which include: (1) the lack of objective findings substantiating his alleged symptoms and limitations; (2) evidence of malingering and exaggeration of symptoms; (3) evidence of substantial secondary gain in his motivation; (4) a range of daily activities inconsistent with his alleged symptoms and limitations; (5) inconsistencies with respect to statements concerning his drug use; (6) his demonstrated level of continued work activities; and (7) other factors discussed in this decision.

Transcript at 23.

## STANDARD OF REVIEW

The Act provides for payment of Disability Benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, SSI may be available to individuals who are age sixty-five or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a). The burden of proof to establish a disability rests upon the claimant. Gomez v. Chater, 74 F.3d 967, 970 (9th Cir.), cert. denied, 519 U.S. 881 (1996) (Disability Benefits); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992) (SSI). To meet this burden, the claimant must demonstrate an inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if there are physical or mental impairments of such severity that the individual is not only unable to do previous work but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2) (A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either Disability Benefits or SSI because he or she is disabled. 20 C.F.R. §§ 404.1520 and 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (Disability Benefits); Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th Cir. 1989) (SSI). First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity." If the claimant is engaged in such activity, Disability Benefits are denied. Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the claimant does not have a severe impairment or combination of impairments, Disability Benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the

claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant has performed in the past. If the claimant is able to perform work which he or she has performed in the past, a finding of "not disabled" is made and Disability Benefits are denied. 20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to do work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Distasio v. Shalala, 47 F.3d 348, 349 (9th Cir. 1995) (DIB); Drouin, 966 F.2d at 1257 (SSI). The claimant is entitled to Disability Benefits only if he or she is not able to perform other work. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

When an individual seeks either Disability Benefits or SSI because of disability, judicial review of the Commissioner's decision is guided by the same standards. 42 U.S.C. §§ 405(g) and 1383(c)(3). This court must review the case to see if the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Drouin, 966 F.2d at 1257. It is more than a scintilla, but less than a preponderance, of the evidence. Id.; Gonzalez v. Sullivan, 914 F.2d 1197, 1200 (9th Cir. 1990). Even if the Commissioner's decision is supported by substantial evidence, it must be set aside if the proper legal standards were not applied in weighing the evidence and in making the decision. Gonzalez, 914 F.2d at 1200. The court must weigh both the evidence that supports and detracts from the Commissioner's decision. Id. The trier of fact, and

not the reviewing court, must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the Commissioner. Gomez, 74 F.3d at 970.

## DISCUSSION

Manning argues that the ALJ erred in finding that his employment from August 1995 to March 17, 1996, qualified as substantial gainful employment. Manning asserts that the ALJ ignored his:

> uncontroverted testimony that (1) every temporary job he was sent on was supposed to be temp-to-permanent, and Plaintiff was never made a permanent employee; (2) he was terminated from virtually every position because he was too slow, could not concentrate, and/or clashed with others on the job to the point that security had to be called; (3) he had to move from agency to agency because the agencies kept terminating him; there were breaks of two days to a whole month between his temp jobs; and (4) Plaintiff's longest-lasting and best-paying job required nothing of Plaintiff other than showing up.

In Lewis v. Apfel, 236 F.3d 503, 515 (9th Cir. 2000), the Ninth Circuit described the general criteria for determining if a claimant has engaged in "substantial gainful activity" as follows:

> Substantial gainful activity is work done for pay of profit that involves significant mental or physical activities. 20 C.F.R. §§ 404.1571-72 and 416.971-75. Earnings can be a presumptive, but not conclusive, sign of whether a job is substantial gainful activity. Monthly earnings averaging less than $300 generally show that a claimant has not engaged in substantial gainful activity. 20 C.F.R. §§ 404.1574(b)(3) and 416.974 (b)(3). At the other end of the spectrum, monthly earnings averaging more than $500 generally show that a claimant has engaged in substantial gainful activity. 20 C.F.R. §§ 404.1574(b)(2) and 416.974 (b)(2). (If a claimant's average monthly earnings fall between $300 and $500, the Commissioner will consider other information listed in the regulations.)

If the evidence shows that a claimant has earned more than $500 a month, the claimant must then produce evidence that he or she has not engaged in substantial gainful activity. If there is no such evidence, the ALJ may find that the claimant has engaged in such work. Lewis at 515. On the

other hand, if evidence shows that claimant has earned less than $500 per month, the claimant has carried his or her burden unless the ALJ points to substantial evidence, aside from earnings, that the claimant has engaged in substantial gainful activity. Id.

The regulations list five factors relevant to the ALJ's determination: (1) the nature of the claimant's work; (2) how well the claimant does the work; (3) if the work is done under special circumstances; (4) if the claimant is self-employed; and (5) the amount of time the claimant spends at work. 20 C.F.R. §§ 404.1573 and 416.973; see also Katz v. Secretary of Health and Human Services, 972 F.2d 290, 293 (9th Cir. 1992). "Generally, an ALJ should not consider activities like taking care of oneself, household tasks, hobbies, school attendance, club activities, or social programs to be substantial gainful activities." Lewis, 236 F.3d at 516; 20 C.F.R. §§ 404.1572 (c) and 416.972 (c).

Manning's earnings records clearly establish that he made more than $500 for eight consecutive months from August 1995 through March 1996. Therefore, the presumption is that Manning engaged in substantial gainful activities during this period. Manning has the burden of proving that such activity did not qualify as substantial gainful employment.

The sole evidence offered to overcome the presumption is Manning's testimony. The ALJ specifically discredited this testimony in his first opinion and relied on this finding in the opinion currently before the court. At the second hearing, which Manning did not attend, Manning's counsel admitted that Manning's memory was bad and he was not necessarily a credible witness. Transcript at 841-45.

Additionally, the ALJ reasoned that even if Manning's work periods were temporary and of short duration, that was expected based on his employment through temporary placement agencies.

The fact that Manning worked for Olsten Staffing Services, Inc., Printers Personnel, Inc., and Standby Personnel for three or more consecutive months is evidence that the staffing agencies were satisfied enough with Manning's performance to continue to send him out on new jobs.

Manning failed to present evidence sufficient to overcome the presumption that he engaged in substantial gainful employment based on his earning in excess of $500 in eight consecutive months. The ALJ properly determined that Manning was not disabled until April 1996, after he was admitted to drug and alcohol treatment.

## CONCLUSION

The Commissioner's findings on Manning's disabilities, considering the record as a whole, are supported by substantial evidence. The decision of the Commissioner should be affirmed.

## Scheduling Order

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due **January 9, 2005**. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

DATED this 22nd day of December, 2005.

    /s/   Donald C. Ashmanskas
DONALD C. ASHMANSKAS
United States Magistrate Judge